# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------X
                                            )
SECURITIES AND EXCHANGE,                    )
COMMISSION,                                 )
                            Plaintiff,      )
                                            )        Civil Action No. 1:22-cv-10889
v.                                          )
                                            )
TRENDS INVESTMENTS INC.,                    )
BRANDON ROSSETTI, CLINTON                   )
GREYLING, LESLIE GREYLING,                  )
ROGER BENDELAC, and THOMAS                  )
CAPELLINI,                                  )
                            Defendants.     )
                                            )
-----------------------------------------------------X
```

# MEMORANDUM IN SUPPORT OF DEFENDANT
# ROGER BENDELAC'S MOTION TO DISMISS THE COMPLAINT

*Attorneys for Defendant Roger Bendelac*
SIMONS LAW OFFICE

*/s/ Joseph B. Simons*
Joseph B. Simons
10 Post Office Square, Suite 800
Boston, MA 02109
Tel: (781) 797-0555
Email: joe@jbsimonslaw.com

THE ROTH LAW FIRM, PLLC
Richard A. Roth, Esq. (*pro hac vice pending*)
Brian Levenson, Esq. (*pro hac vice pending*)
1295 Madison Avenue, Floor 22
New York, NY 10017
Tel: (212) 542-8882

# TABLE OF CONTENTS

Introduction.................................................................................................................1

Summary Of The SEC's Complaint....................................................................1

Argument.......................................................................................................................2

Point I: The Complaint Against RB Should Be Dismissed As The Venue Of This Court Is Improper Pursuant To Rule 12(b)(3)................................................................................2

    A. Legal Standard ....................................................................................................3

    B. Venue in the District Court of Massachusetts Is Improper for RB ................4

    C. The Complaint Pleads De Minimis Contacts with Massachusetts that are an Immaterial Part of The Core Allegations ...................................................................................5

Point II: The Complaint Fails To State A Claim And Requires Dismissal Per Rule 9(b) ......6

    A. General Pleading Standard for Motion to Dismiss ..........................................7

    B. Claims Brought Under Section 10(b), SEC Rule 10b-5, 9(a)(2) and 17(a)(1) Are Subject to Heightened Pleading Requirements Under Rule 9(b) .......................................7

Point III: The SEC Fails To Allege That RB Acted With Scienter ........................................8

Point IV: The Claims That RB's Trading In Token Stock Was Manipulative Fail...............10

Point V: The SEC Fails To State A Claim For Aiding And Abetting Against RB ...............14

    A. The Complaint Fails to Allege that RB Had Actual Knowledge of Any Fraudulent Conduct...................................................................................................................15

    B. The SEC's Allegations Are Legally Deficient.................................................16

    C. The SEC Fails to Sufficiently Plead Knowing and Substantial Assistance By RB ......17

Point VI: The Complaint Fails to Comply with Particularity Requirement of Rule 9(b) ...19

Request for Oral Argument ..................................................................................................20

Conclusion ............................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
  512 F. 3d 46, 58 (1st Cir. 2008)..........................................................................**17**

*Aldridge v. A.T. Cross Corp.*,
  284 F. 3d 72, 82 (1st Cir. 2002)............................................................................**9**

*Allan Harwich, The Neglected Relationship of Materiality and Recklessness in Actions under Rule 10b-5*,
  55 Bus. Law. 1023, 1024 & n. 10 (2000).. .........................................................**16**

*Armstrong v. McAlpin*,
  699 F.2d 79, 92-93 (2d Cir. 1983).. ......................................................................**8**

*ATSI Communications, Inc. v. Shar Fund, Ltd.*,
  49 F. 3d 87 (2d Cir. 2007)....................................................................................**12**

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696, 699 (9th Cir. 1990) .........................................................................**7**

*Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 177 (1994).......................................................................................**13**

*Bell Atlantic v. Twombly*,
  550 U.S. 544, 555 (2007).......................................................................................**7**

*Bernstein v. Applied Extrusion Technologies*,
  150 F.R.D. 433 (D. Mass. 1993)..........................................................................**20**

*Chris-Craft Industries v. Piper Aircraft*,
  480 F. 2d 341 (2d Cir.) *cert. denied,* 414 U.S. 910 (1973).......................................**11**

*Citizens for a Better Environment-California v. Union Oil Co. of California*,
  861 F. Supp. 889, 898 (N.D. Cal. 1994) ...............................................................**5**

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416, 428 (S.D.N.Y. 2010).....................................................**8, 17**

*Crane v. Westinghouse Air Brake Co.*,
  419 F. 2d 787, 794 (2d Cir. 1969).........................................................................**8**

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)................................................................**17**

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
    551 F. Supp. 2d 210, 228 (S.D.N.Y. 2008).............................................................**8**

*Ernst & Ernst v. Hochfelder*,
    425 U.S., 185 at 193 n. 12, 96 S. Ct. 1375)..........................................................**8, 10**

Exchange Act Release,
    No. 3056, at 2 (October 27, 1941)........................................................................**11**

*Flannery v. SEC*,
    810 F. 3d 1, 9 (1st Cir. 2015)...............................................................................**17**

*GFL Advantage Fund Ltd. v. Colkitt*,
    272 F. 3d 189 (3d Cir. 2001)................................................................................**13**

*Gonzales v. Lloyds TSB Bank, PLC*,
    532 F. Supp. 2d 1200, 1207 (C.D. Cal. 2006)......................................................**9**

*Greenstone v. Cambex Corp.*,
    975 F. 2d 22 (1st Cir. 1992).................................................................................**19**

*Guarary v. Winehouse*,
    190 F. 2d 366, 374 (6th Cir. 1981)......................................................................**13**

*Guidry v. Bank of LaPlace*,
    954 F.32d 278, 281 (5th Cir. 1992)......................................................................**7**

*Hilgeman v. Nat'l Ins. Co. of Am.*,
    547 F. 2d 298, 301 n.7 (5th Cir. 1977) ...............................................................**3**

*Howard v. SEC*,
    376 F.3d 1136, 1142 (D.C. Cir. 2004).................................................................**19**

*In re Agape Litig.*,
    773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011)..........................................................**15**

*In re GlenFed, Inc., Sec. Litig.*,
    42 F.3d 1541, 1545 (9th Cir. 1994) .....................................................................**7**

*In re NBTY, Inc., Sec. Litig.*,
    224 F. Supp. 2d 482, 491 (E.D.N.Y. 2002)..........................................................**20**

*In re Scholastic Corp. Sec. Litig.*,
    252 F. 3d 63, 76 (2d. Cir. 2001)................................................................**17**

*Iowa Pub. Emp's Ret. Sys. V. Deloitte Touche LLP*,
    No. 12 Civ. 2136, 2013 WL 245805, at * 19 (S.D.N.Y., Jan. 23, 2013)...............**15**

*Jackson Nat. Life Ins. Co. v. Economou*,
    557 F. Supp. 2d 216, 220 (D.N.H. 2008)......................................................**4**

*Jones v. Inteli-Check Inc.*,
    274 2d 615, 627-28 (D.N.J. 2003)...............................................................**14**

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 at 292 (2d Cir. 2006)........................................................**8, 16**

*Marathon Oil v. Mobil*,
    669 F. 2d 366 (6th Cir. 1981).....................................................................**13**

*Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*,
    434 F. Supp. 2d 1051, 1057-58 (D. Kan. 2006)...............................................**3**

*M.K.C. Equip Co., Inc. v. M.A.I.L. Code, Inc.*,
    843 F. Supp. 679, 682-83 (D. Kan. 1994 ......................................................**3**

*Novak v. Kasaks*,
    216 F. 3d 300 at 308 (2d Cir. 2000).............................................................**17**

*Piedmont Label Co. v. Sun Garden Packing Co.*,
    598 F. 2d 491, 496 (9th Cir. 1979)................................................................**3**

*Pierce v. Shorty Small's of Branson Inc.*,
    137 F.3d 1190, 1191 (10th Cir. 1998) ...........................................................**5**

*Rosner v. Bank of China*,
    No. 06 Civ. 13562, 2008 WL 5416380 at *5 (S.D.N.Y. 2008) aff'd, 349 Fed. App.637 (2d
    Cir. 2009).............................................................................................**17**

S. Rep,
    No. 792, note 124, at 16, 17, 17 H.R. Rep. No. 1383, supra note 124 at 20...........**12**

*Santa Fe Indus. v. Green*,
    430 U.S. 462 (1977)............................................................................**10, 13**

*SEC v. Apuzzo*,
    689 F.3d 204, 206 (2d Cir. 2012)................................................................**18**

*SEC v. Baxter*,
   No. C-05-03843 RMW, 2007 WL 2013958, at*8 (N.D. Cal. 2007).. ...............................**7, 18**

*SEC v. Berry*,
   580 F. Supp. 2d 911, 924 (N.D. Cal. 2008)...............................................................**9**

*SEC v. Cedrick Kushner Promotions, Inc.*,
   417 F. Supp. 2d 326 (S.D.N.Y. 2006).....................................................................**15, 16**

*SEC v. Espuelas*,
   579 F. Supp ed 461, 484 (S.D.N.Y. 2008)..............................................................**15, 18**

*SEC v. Fife*,
   311 F. 3d 1, 9 (1ˢᵗ Cir. 2002).................................................................................**9**

*SEC v. Fraser*,
   No. CV-09-00443-PHX-GMS, 2010 WL 5776401, at *3 (D. Ariz. 2010).. ............................**8**

*SEC v. KPMG*,
   03 Civ. 671 (DLC) (S.D.N.Y. Apr. 9, 2003).. .........................................................**15**

*SEC v. KMPG LLP*,
   2003 U.S. Dist. LEXIS 14521, *10 (S.D.N.Y. 2003)..........................................**9,19**

*SEC v. Lucent Technologies, Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009).. ......................................................................**15**

*SEC v. Malefant*,
   784 F. Supp. 141, 144 (S.D.N.Y. 1992).................................................................**11**

*SEC v. Nacchio*,
   614 F. Supp 2d 1164, 1173-74 (D. Colo. 2009).. ..................................................**19**

*SEC v. Peretz*,
   317 F. Supp 2d 58, 64...........................................................................................**19**

*S.E.C. v. Spencer Pharm. Inc.*,
   57 F. Supp. 3d 127, 137 (D. Mass. 2014) ..............................................................**4**

*SEC v. Treadway*,
   430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006)............................................................**18**

*SEC v. Zwick*,
   No. 03 Civ. 2742, 2007 WL 831812 at*16 (S.D.N.Y. 2007)....................................**18**

*S-G Securities, Inc. v. Fuqua Inv. Co.*,
    466 F. Supp. 1114, 1121 (D. Mass. 1978) .................................................................**4, 6**

*Sohns v. Dahl*,
    392 F. Supp. 1208, 1215 (W.D. Va. 1975) (D. Mass. 1978) ........................................**4**

*Stern v. Gobeloff*,
    332 F. Supp. 909, 911 (D. Md. 1971) ..........................................................................**3**

*Stevalman v. Alias Research Inc.*,
    174 F. 3d 79, 84 (2d Cir. 1999) ....................................................................................**20**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 319, 127 S. Ct. 2499, 168 L. Ed. 179 (2007) .........................................**8**

*Trane v. O'Connor Securities*,
    561 F. Supp. 301 (S.D.N.Y. 1993) ................................................................................**11**

*Trust Co. of La. v. N.N.P. Inc.*,
    104 F.3d 1478, 1490 (5th Cir. 1997).. ...........................................................................**16**

*Tuchman v. DSC Commc'ns*,
    14 F.3d 1061, 1068. (5th Cir. 1994).. ............................................................................**9**

*U.S. ex rel. Lee v. SmithKline Beechum, Inc.*,
    245 F.3d 1048, 1051-52 (9th Cir. 2001).. .....................................................................**7**

*U.S. SEC v. Power*,
    525 F. Supp. 2d 415, 424 (S.D.N.Y. 2007) ...................................................................**7**

*Vess v. Ciba-Geigy Corp., USA*,
    317 F.3d 1097, 1107 (9th Cir. 2003) .............................................................................**7**

*Woodward v. Metro Bank of Dallas*,
    522 F.2d 84, 96 (5th Cir. 1975).. ...................................................................................**19**

*Wright v. Schock*,
    571 F. Supp. 642, 663 (N.D. Cal. 1983), aff'd, 742 F.2d 541 (9th Cir. 1984).. ...........**19**

## <u>STATUTES</u>

Code of Civil Procedure 12(b)(6) ...............................................................................**1, 7**

Code of Civil Procedure 12(b)(3) ..............................................................................**1, 2, 3**

Code of Civil Procedure 9(b) ................................................................**1, 2, 7, 8, 9, 14, 15, 19, 20**

The Exchange Act 10(b) ................................................................**1, 2, 7, 8, 12, 13, 14, 16, 20**

The Exchange Act 10b-5 ................................................................**1, 2, 7, 12, 14**

The Exchange Act 9(a)(2) ................................................................**1, 2, 8, 11**

The Securities Act of 1933 17(a)(1) ................................................................**1, 2, 7, 8**

The Securities Act of 1933 17(a)(3) ................................................................**1, 2, 7**

The Securities Act of 1933 22(a) ................................................................**2, 3, 4**

The Exchange Act 27 ................................................................**2, 3, 4**

28 U.S.C. Section 1406(a) ................................................................**3, 5**

Pursuant to Federal Rules of Civil Procedure, ("FRCP"), 12(b)(6) and 12(b)(3), and FRCP 9(b), Defendant Roger Bendelac ("RB" or "Defendant"), by his counsel The Roth Law Firm, PLLC and The Simons Law Firm, P.C., seeks dismissal of the SEC Complaint for the reasons set forth below.

## **INTRODUCTION**

This is an enforcement action filed by the Securities and Exchange Commission ("SEC") arising out of an alleged scheme by defendants Trends Investments, Inc. ("Trends"), Brandon Rossetti ("Rossetti"), Clinton Greyling and Leslie Greyling (the "Core Defendants") to defraud investors in connection with private offerings of two publicly traded companies. Defendant RB is accused of violating Section 10(b) of the Exchange Act, Rule 10b-5, Section 9(a)(2) of the Exchange Act, and Sections 17(a)(1) and (3) of the Securities Act of 1933 and of aiding and abetting the Core Defendants in their alleged scheme to defraud investors in private securities offerings by effecting manipulative transactions in the securities of one of the companies, Token Communities, Ltd. ("Token").

For the reasons set forth herein, the Complaint fails to state a claim against him upon which relief can be granted and venue in the District Court of Massachusetts is improper for RB. Accordingly, it is respectfully submitted that the Complaint against RB be dismissed.

## **SUMMARY OF THE SEC'S COMPLAINT**

In its Complaint, the SEC alleges that Defendants Trends, Rossetti, Clinton Greyling, and Leslie Greyling (the "Core Defendants") engaged in a scheme to defraud investors in private offerings of two publicly traded companies: Alterola Biotech Inc. ("Alterola"); and Token Communities Ltd. ("Token"). (Compl. Par. 1-3). The SEC alleges Defendant RB and Clinton Greyling coordinated trading in Token using multiple brokerage accounts, to create the false appearance of active trading in Token stock, with the intention of inflating the stock price. It is

further alleged, without specificity, that RB placed these manipulative trades to induce the purchase of Token stock (i) by private investors to whom defendant Trends was offering stock; and (ii) by other investors in the public marketplace. (Compl. Par. 4).

Without alleging the who, what, where and when of RB's conduct, the Complaint alleges RB violated Sections 17(a)(1) and 17(a)(3) of the Securities Act and Section 9(a)(2), Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder. The SEC also alleges without sufficient particularity, as required by FRCP 9(b), that RB aided and abetted the securities law violations of the Core Defendants via transactional manipulation of Token stock. (Compl. Par. 9). Without regard to the requirements of Rule 9(b), the SEC alleges that RB's trading in the brokerage account of his limited liability company, the brokerage accounts of his brother-in-law, and another relative constitutes aiding and abetting the Core Defendants' securities law violations. (Compl. Par. 10).

## ARGUMENT

### POINT I

### THE COMPLAINT AGAINST RB
### SHOULD BE DISMISSED AS THE VENUE OF THIS
### COURT IS IMPROPER PURSUANT TO RULE 12(b)(3)

The SEC alleges that venue lies in this Court pursuant to Section 22(a) of the Securities Act and Section 27 of the Securities Exchange Act on the grounds that certain of the acts, practices, transactions and courses of business alleged in the Complaint occurred within the District of Massachusetts: e.g., Trends solicited and received investments from two Massachusetts investors and Rossetti resided in Massachusetts when he offered and sold stock on behalf of Trends.

### A. Legal Standard

Fed. R. Civ. P. 12(b)(3) allows a party to raise the defense of improper venue by motion. Generally, the standards for deciding a motion to dismiss for improper venue follow those applied to a motion to dismiss for lack of personal jurisdiction. *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc*. 434 F. Supp. 2d 1051, 1057-58 (D. Kan. 2006). When defendant challenges venue under Rule 12(b)(3), plaintiff bears the burden of making prima facie showing by submitting affidavits and other written material establishing ghat venue is proper in the forum state. *Id*. see also *M.K.C. Equip Co., Inc. v. M.A.I.L. Code, Inc*. 843 F. Supp. 679, 682-83 (D. Kan. 1994Once venue is challenged, the plaintiff bears the burden of demonstrating the propriety of venue in the chosen judicial district. *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F. 2d 491, 496 (9th Cir. 1979). If the court concludes the case is filed in the wrong venue, it "shall dismiss" the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. Section 1406(a).

When a plaintiff asserts claims under both the Securities Act and the Exchange Act, the general rule is that the less restrictive jurisdiction and venue provisions contained in Section 27 of the Exchange Act are to be applied. *Hilgeman v. Nat'l Ins. Co. of Am.,* 547 F. 2d 298, 301 n.7 (5th Cir. 1977); *Stern v. Gobeloff*, 332 F. Supp. 909, 911 (D. Md. 1971). Section 27 of the Exchange Act provides for venue in a district in which "any act or transaction constituting the violation occurred," or in which "the defendant is found or is an inhabitant or transacts business." 15 U.S.C. Section 78aa(a). Section 22 of the Securities Act provides for venue in any district "wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer of sale took place, **if the defendant participated therein**." (emphasis added).

Under the Exchange Act, venue may be laid in 'the district wherein any act or transaction constituting the violation occurred.'" *S.E.C. v. Spencer Pharm. Inc.*, 57 F. Supp. 3d 127, 137 (D. Mass. 2014) (quoting 15 U.S.C. § 78aa.). Furthermore, "the venue-sustaining act need not constitute the core of the alleged violation… so long as '(it) represents more than an immaterial part of the alleged violations." *S-G Securities, Inc. v. Fuqua Inv. Co.*, 466 F. Supp. 1114, 1121 (D. Mass. 1978) (quoting *Sohns v. Dahl*, supra, at 1215). Under the Securities Act, venue is proper in "the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein…" 15 U.S.C. §77v(a). With regard to determining of venue is proper, courts have been granted broad discretion to transfer a case on the grounds of improper venue. "A properly grounded motion to transfer venue is committed to the discretion of the transferor court, which has wide latitude in determining whether to grant it." *Jackson Nat. Life Ins. Co. v. Economou*, 557 F. Supp. 2d 216, 220 (D.N.H. 2008)

**B. Venue in the District Court of Massachusetts is Improper for RB**

RB is a resident of New York, New York. (Compl. Par. 19). Defendant's brokerage and bank accounts, which are the subject of the SEC's claims against RB, are also in Manhattan. The RB-controlled businesses referenced in the Complaint have their principal place of business in Manhattan and do not conduct business in Massachusetts. The SEC does not allege that RB engaged in any of his alleged unlawful conduct in the District of Massachusetts nor does the SEC allege that RB had any dealings with Rossetti, or the Massachusetts investors described in the Complaint. The SEC does not allege that RB participated in the offer or sale of securities in the State of Massachusetts. In summary, RB has absolutely no contact with the District of Massachusetts with respect to any matter relevant to this case. Witnesses and documents relating

to RB's defense will be found in New York, New York and not in the District of Massachusetts. To compel RB to travel to Boston to defend himself against the SEC's charges would cause defendant unreasonable and unwarranted inconvenience and economic hardship.

For these reasons, the case against RB should be dismissed. Alternatively, if the court determines that it is in the interest of justice, the case against RB should be transferred to the Southern District of New York, where RB resides and conducts business: i.e., a district or division in which it could have been brought. 28 U.S.C. Section 1406(a). The "decision of whether to dismiss or transfer lies within the sound discretion of the district court*." Pierce v. Shorty Small's of Branson Inc.,* 137 F.3d 1190, 1191 (10th Cir. 1998); *Citizens for a Better Environment-California v. Union Oil Co. of California*, 861 F. Supp. 889, 898 (N.D. Cal. 1994).

## C. The Complaint Pleads De Minimis Contacts with Massachusetts that are an Immaterial Part of the Core Allegations

The sum of all activity concerning Massachusetts in the Complaint is as follows:

> Trends solicited and received investments from two Massachusetts investors, and Rosetti resided in Massachusetts at various points when he offered and sold stock on behalf of Trends.

Complaint, ¶ 13. This is insufficient to establish proper venue. The Complaint is clear that defendants Bendelac and Cappellini are residents of New York. Complaint, ¶¶ 18-19. Further, the Complaint is littered with references to countless other investors that invested without any indication that any of the purported unlawful activity occurred in Massachusetts. Complaint, ¶¶ 30, 32, 35, 37-55, 76-77. For example, the Complaint alleges:

> In March and April 2017, Trends obtained approximately $500,000 from seven investors who were promised that they were purchasing shares of Alterola directly from Trends." Complaint, ¶¶ 38.

> During [April 2017 until January 2018], Trends received approximately, $500,000 from investors who purchased shares [of Token]. Complaint, ¶ 43.

Trends aggressively marketed both Token and Alterola to new and existing investors …[who] paid Trends an additional $1.3 million in return for Trends' promises of shares of Token and/or Alterola. Complaint, ¶ 45.

The defendants defrauded more than 30 investors out of approximately $2.3 million which was wired to Trends and then further divided among the Greylings and Rosetti. ¶ 6, 55

It is plain from the Complaint, that these are the core allegations of the Complaint and that **none of which** relate to Massachusetts. Accordingly, venue is not proper in Massachusetts as the allegations of two investors in paragraph 13 are an immaterial part of the core allegations of the Complaint. *S-G Securities, Inc. v. Fuqua Inv. Co.*, 466 F. Supp. 1114, 1121 (D. Mass. 1978)

### POINT II

### THE COMPLAINT FAILS TO STATE A CLAIM
### AND REQUIRES DISMISSAL PER RULE 9(b)

The SEC fails to allege RB had knowledge of the alleged scheme by the Core Defendants to defraud investors or that RB even knew that the Core Defendants were engaged in private offering of Alterola or Token. The SEC does not allege any facts from which one can reasonably infer that RB knew that the Core Defendants were engaged in a fraudulent scheme. Absent particularized allegations setting forth the who, what, where when and why of RB's knowledge of a fraudulent scheme by the Core Defendants, the claims against RB must be dismissed.

The SEC's allegations regarding RB's alleged manipulative trading in Token purport to describe in detail a comprehensive picture of RB's pattern of trading in that stock. In reality, however, the SEC has intentionally omitted relevant trades effected by RB in Token because these trades do not confirm the SEC's theory that RB, through coordinated sham trades with Clinton Greyling, was manipulating Token for the purpose of inducing investors to purchase shares of the stock from the Core Defendants in private offerings. Moreover, the allegations that RB coordinated

trades with Clinton Greyling are merely conclusory and fail to specify with particularity required by Rule 9(b) when, where how and why these specific transactions were "coordinated."

### A. General Pleading Standards for Motion to Dismiss

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) is granted when the plaintiff fails to state a claim upon which relief can be granted, including where plaintiff fails to allege sufficient facts to support a cognizable legal theory. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1107 (9th Cir. 2003); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.32d 278, 281 (5th Cir. 1992).

### B. Claims Brought Under Section 10(b), SEC Rule 10b-5, 9(a)(2) and 17(a)(1) Are Subject to Heightened Pleading Requirements Under Rule 9(b).

When, as here, a party alleges fraud, that party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b); *Vess v. Ciba Geigy Corp., USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Where claims sound in fraud, including those in Section 10(b), Rule 10b-5 and Section 17(a), the Rule 9(b) standard applies. *SEC v. Baxter,* No. C-05-03843 RMW, 2007 WL 2013958, at*8 (N.D. Cal. 2007); see also *In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994) (stating that the court has repeatedly recognized, implicitly or explicitly, that Rule 9(b) applies to actions brought under the federal securities laws*); U.S. SEC v. Power*,

525 F. Supp. 2d 415, 424 (S.D.N.Y. 2007); *SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2010 WL 5776401, at \*3 (D. Ariz. 2010) ("Securities fraud actions are also subject to the heightened pleading standard of [FRCP] 9(b), which requires a plaintiff to state with particularity the circumstances constituting the fraud") (internal quotations omitted).

To comply with Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *U.S. ex rel. Lee v. SmithKline Beechum, Inc*. 245 F.3d 1048, 1051-52 (9th Cir. 2001) (internal quotations omitted). "To plead a claim under Section 9(a) and Section 10(b), plaintiffs must 'state with particularity facts giving rise to a strong inference that each defendant acted with scienter.'" *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 428 (S.D.N.Y. 2010) (citing *Edison Fund v. Cogent Inv. Strategies Fund, Ltd*., 551 F. Supp. 2d 210, 228 (S.D.N.Y. 2008); *Crane v. Westinghouse Air Brake Co.*, 419 F. 2d 787, 794 (2d Cir. 1969) ("Sections 9(a)(2) and 9(e) contain requirements of both manipulative motive and willfulness."). "Scienter is a 'mental state embracing intent to deceive, manipulate or defraud.'" *Id.* at 428, quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319, 127 S. Ct. 2499, 168 L. Ed. 179 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S., 185 at 193 n. 12, 96 S. Ct. 1375). "In deciding whether the allegations of the [Amended Complaint] give rise to a 'strong inference' of scienter, the Court must consider whether any allegations of scienter are 'cogent and at least as compelling as any opposing inference of nonfraudulent intent."' *Id*. at 228 quoting *Tellabs*, 551 U.S. at 314, 127 S. Ct. 2499.

Allegations of aiding and abetting Section 10(b), and 17(a)(1) claims are also subject to FRCP Rule 9(b). *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 at 292 (2d Cir. 2006) (applying Rule 9(b) to claims for aiding and abetting fraud); *Armstrong v. McAlpin*, 699 F.2d 79, 92-93 (2d Cir.

1983) (same). Where claims sound in fraud, the particularity requirements of Rule 9(b) apply. *SEC v. Berry,* 580 F. Supp. 3d 911, 924 (N.D. Cal. 2008) (applying Rule 9(b) pleading requirements to aiding and abetting claims grounded in fraud); *Gonzales v. Lloyds TSB Bank, PLC,* 532 F. Supp. 2d 1200, 1207 (C.D. Cal. 2006) (applying Rule 9(b) to a claim of aiding and abetting breach of fiduciary duty and fraud). "Although scienter may be 'averred generally,' . . . pleading scienter requires more than a simple allegation that a defendant had a fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support the inference of fraud." *Tuchman v. DSC Commc'ns*, 14 F.3d 1061, 1068. (5th Cir. 1994). Plaintiff's conclusory allegations do not even come close to meeting this standard and thus the Complaint against RB should be dismissed.

## POINT III

## <u>THE SEC FAILS TO ALLEGE THAT RB ACTED WITH SCIENTER</u>

It is well established that the SEC must allege that RB acted with scienter, "a mental state embracing an intent to deceive, manipulate, or defraud." *SEC v. Fife,* 311 F. 3d 1, 9 (1st Cir. 2002); *SEC v. KMPG LLP,* 2003 U.S. Dist. LEXIS 14521, *10 (S.D.N.Y. 2003). Alternatively, the SEC must allege that RB acted with a "high degree of recklessness." *Aldridge v. A.T. Cross Corp*., 284 F. 3d 72, 82 (1st Cir. 2002). The SEC's claims of manipulative trading in Token stock by RB are inextricably intertwined with the allegations that the Core Defendants were defrauding investors in private sales of Alterola and Token. RB's purported motivation to engage in coordinated sham transactions in Token stock with Clinton Greyling was to create a false appearance of market activity and price "to induce investments [in private offerings of Alterola and Token], quiet investor concerns, and avoid detection." (Compl. 56). The foundation of the SEC's claims against RB, therefore, is his professed knowledge of, and participation in, the Core Defendants' scheme to defraud investors in connection with private their offerings. Absent RB's knowledge of the fraud, there is no basis for concluding that RB's trades were designed to manipulate the market in

Token stock, particularly when the SEC states in its Complaint that the alleged scheme of the Core Defendants started exclusively in connection with Alterola (Compl. Par. 38) where the Core Defendants made substantial trades long before RB effected any trades in Token. The SEC fails to state in its Complaint exactly how many alleged fraudulent trades were made by the Core Defendants in Alterola prior to the first transaction made by RB in Token. Significantly, the Complaint fails to allege that RB had specific knowledge either of the private offerings or that the Core Defendants were engaged in a fraudulent scheme. Without proper pleading of such allegations, the Complaint of both primary and secondary securities fraud allegations against RB must fail.

## POINT IV

## THE CLAIMS THAT RB'S TRADING IN
## <u>TOKEN STOCK WAS MANIPULATIVE FAIL</u>

The Supreme Court has described manipulation as "virtually a term of art…connoting intentional or willful conduct designed to deceive or defraud investors" by controlling or artificially affecting the prices of securities. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976). Usually, manipulation involves the use of deceptive devices like wash sales, matched orders, and fictitious trades. *Santa Fe Indus. v. Green*, 430 U.S. 462 (1977).

Section 9(a) of the Exchange Act regulates all acts and devices that tend to create an illusion of supply or demand where no supply or demand exists and seeks to prevent the creation of artificial prices with the intent to induce investors into purchasing or selling securities. In addition to establishing that the alleged manipulator engaged in a "series of transactions at successively higher or lower prices," the prosecution of a claim under 9(a) requires a showing that the trader/investor (i) created an artificial price and (ii) had a manipulative purpose: i.e., that she sought

to induce buyers or sellers to purchase or sell securities at artificially or inflated or deflated prices. (RB has not been charged with a Section 9(a)(1) violation which prohibits specific types of manipulative activity, such as wash sales and matched orders).

The elements of a Section 9(a)(2) manipulation require the plaintiff to prove the following: "(1) a series of transactions in the security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter and (3) for the purpose of inducing the security's purchase or sale by others." *SEC v. Malefant*, 784 F. Supp. 141, 144 (S.D.N.Y. 1992). Section 9(a)(2) does not proscribe all buying or selling which tends to raise or lower the price of a security. *Chris-Craft Industries v. Piper Aircraft*, 480 F. 2d 341 (2d Cir.) *cert. denied*, 414 U.S. 910 (1973). "So long as the investor's motive in buying or selling a security is not to create an artificial demand for, or supply of, the security, illegal market manipulation is not established." Id. at 383.

Evidence of active trading that affected the price of a stock and induced purchases by others was insufficient, on its own, to support a claim under 9(a)(2). *Trane v. O'Connor Securities*, 561 F. Supp. 301 (S.D.N.Y. 1993). "The central purpose of Section 9(a)(2) is not to prohibit market transactions which may raise or lower the price of securities but to keep an open and free market where the natural forces of demand determine a security's price." Id. at 309, *quoting Chris-Craft*. In determining that the defendant did not manipulate the market in violation of 9(a)(2), the Court in Trane noted, inter alia, that the defendant purchased and sold stock through open market channels. See Opinion of General Counsel," Exchange Act Release No. 3056, at 2 (October 27, 1941). Congress expressly rejected the notion that manipulative intent could be inferred from the fact that a trader made sizeable purchases or sales and knew or should have known that this would

11

affect the price of the security. See S. Rep. No. 792, note 124, at 16, 17, 17 H.R. Rep. No. 1383, supra note 124 at 20

In this case, it is alleged that on several occasions, RB sold shares of Token to his brother-in-law.  However, since the SEC failed to adequately pleads that RB had knowledge of the fraudulent scheme and was making these trades to facilitate that fraud, the SEC's complaint against RB fails and must be dismissed. The mere fact that these transactions may have affected the price of Token is not evidence of a manipulative intent, an indispensable element to the claim. On their face, there is nothing illegal about any of the Token trades which were made by RB in the open market and subject to the scrutiny of the regulators.

RB's trading, as alleged, does not state a claim for a violation of Section 10(b) or Rule 10b-5's proscriptions against manipulation. In *ATSI Communications, Inc. v. Shar Fund, Ltd.*, 49 F. 3d 87 (2d Cir. 2007), the Second Circuit considered whether open market transactions, constituted actionable manipulative conduct under Section 10(b) and Rule 10b-5. The plaintiff, a publicly traded corporation, claimed that defendants manipulated the market in its stock by bringing about a "death spiral" in the stock price. Plaintiff complained that the defendants, convertible shareholders, shorted ATSI common stock for the purpose of driving down its price and then profited by converting ATSI convertible securities and covering shorts at discounted prices. Plaintiff alleged that the convertible securities allowed defendants to increase their profits with discounted common shares not obtained in the open market; relying on the convertible securities as a hedge against the risk of loss; and diluting existing common shares, resulting in further decline in the stock price. The District Court for the Southern District of New York dismissed the Complaint.

In considering Plaintiff's appeal, the Second Circuit noted that Section 10(b) proscribes the use of manipulative or deceptive devices or contrivances and prohibits manipulative acts; *citing Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 177 (1994). The court further acknowledged that Section 10(b)'s general prohibition of practices deemed by the SEC to be "manipulative," (in the technical sense of artificially affecting market activity in order to mislead investors), is fully consistent with the fundamental purpose of the Act: i.e., "to substitute a philosophy of full disclosure for the philosophy of caveat emptor." Id. at 100, *citing Santa Fe Industries v. Green.*

The Court then considered the critical question, "what activity" artificially affects a security's price in a deceptive manner?"  The Court held that to sustain a charge of manipulation under Section 10(b) it was necessary to show that the alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants valued the security and that "the deception arises from the fact that investors are led to believe that prices at which they purchase and sell shares are determined by the natural interplay of supply and demand, not rigged by manipulators." Id. at 100, *quoting Guarary v. Winehouse*, 190 F. 2d 366, 374 (6th Cir. 1981). See *Marathon Oil v. Mobil,* 669 F. 2d 366 (6th Cir. 1981) (Manipulation under Section 10(b) refers to "means unrelated to natural forces of supply and demand.")

In determining whether the defendant's short selling of ATSI sent a false pricing signal to the market and was engineered to trigger demand or supply, the Court was persuaded by the reasoning in *GFL Advantage Fund Ltd. v. Colkitt,* 272 F. 3d 189 (3d Cir. 2001). *GFL* deal with allegations of "open market manipulation" and the Third Circuit distinguished manipulative conduct from legal conduct by asking whether the alleged manipulator "injected information into the marketplace or created a false impression of supply and demand for the security…for purpose

of artificially depressing or inflating the price of the security." Id. at 207. See *Jones v. Inteli-Check Inc.,* 274 2d 615, 627-28 (D.N.J. 2003).

Following the reasoning in *GFL*, the Second Circuit in *ATSI* concluded that "to be actionable as a manipulative act, short selling must be willfully combined with something more to create a false impression of how market participants valued a security. Similarly, purchasing a floorless convertible security is not, by itself or when coupled with short selling, inherently manipulative. " Id. at 100.

In its Complaint, the SEC cherry picks certain trades RB made in Token, ("Selected Trades") which purportedly support their theory that RB was manipulating the stock in furtherance of the Core Defendants' scheme to defraud investors to whom they were offering shares in private securities transactions. Critically, the SEC does not allege that shares of Token were sold by RB or his brother-in-law at artificially inflated prices. They merely allege that RB sold shares to his brother-in-law's account and that he received payment for the shares sold. The claims that these transactions were sham trades coordinated between RB and Clinton Greyling are merely conclusory allegations which do not comport with the particularity requirements of Rule 9(b)

## POINT V

## THE SEC FAILS TO STATE A CLAIM FOR AIDING AND ABETTING AGAINST RB

Section 104 of the Private Securities Litigation Reform Act of 1995 ("PLSRA") authorizes the SEC to bring an action against parties who aid and abet primary violations of certain provisions of the securities laws, including Section 10(b) and Rule 10b-5 promulgated thereunder.

Section 104 provides:

"For purposes of any action brought by the Commission under paragraph (1) or (3) of Section 78u(d) of this title, any person that *knowingly* provides substantial assistance to another person in violation of a provision of this chapter, or of any rule or regulation issued under this chapter shall be deemed to be in violation of

14

such provision to the same extent as the person to whom such assistance is provided." 15 U.S.C. Section 78(e) (emphasis added).

## A. The Complaint Fails to allege that RB had actual Knowledge of Any Fraudulent Conduct.

The standard for pleading "actual knowledge" for a claim of aiding and abetting fraud is more stringent than that for pleading the underlying fraud. See *Iowa Pub. Emp's Ret. Sys. V. Deloitte Touche LLP*, No. 12 Civ. 2136, 2013 WL 245805, at * 19 (S.D.N.Y., Jan. 23, 2013); *In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011) ("While a plaintiff may adequately plead under Rule 9(b) the scienter required to support an underlying fraud claim 'by providing a factual basis which gives rise to a strong inference of fraud, including facts that constitute strong circumstantial evidence of recklessness, [case law] defines knowledge in the context of an aiding and abetting claim as actual knowledge." (Citations omitted). The plaintiff "must allege that the defendant had actual knowledge of the wrongful conduct, not simply that the defendant should have known of the conduct." *Id*. (quotation and citation omitted). Factual allegations that give rise only to an inference of recklessness are insufficient as a matter of law. *SEC v. Espuelas*, 579 F. Supp ed 461, 484 (S.D.N.Y. 2008) ("[T]he allegations against [defendant] raise a strong inference that [defendant] was reckless. The fact that actual knowledge is the standard for aiding and abetting, however, compels the Court to dismiss the claims…")

Courts have required that the SEC allege facts that would suggest that the defendant knowingly participated in the fraudulent activity and that a pleading of recklessness is not sufficient to state a claim of aiding and abetting liability. See, *SEC v. Lucent Technologies, Inc*., 610 F. Supp. 2d 342 (D.N.J. 2009). In *SEC v. KPMG,* the court rejected the SEC's argument "that Section 20(e) encompasses recklessness in addition to actual knowledge." *SEC v. KPMG,* 03 Civ. 671 (DLC) (S.D.N.Y. Apr. 9, 2003). In *SEC v. Cedrick Kushner Promotions, Inc*., the court

15

dismissed an SEC claim for aiding and abetting violations of Section 10(b) for failure to allege the correct mental state and rejected the SEC's assertion that recklessness suffices to sustain such claim. The court agreed with the holding in *KPMG* "that knowing misconduct must now be shown: to maintain an aiding and abetting claim for fiduciaries and non-fiduciaries." *See SEC v. Cedric Kushner Promotions, Inc.,* 417 F. Supp. 2d 326 (S.D.N.Y. 2006).

The SEC's Complaint against RB fails to meet this high burden. The Complaint fails to allege that RB had actual knowledge of the SEC's core allegation that the Core Defendants were defrauding investors in their private offerings. Critically, the Complaint fails to allege that RB even had actual knowledge of any fraudulent conduct on the part of the Core Defendants. This is fatal. See *Lerner*, 459 F.3d at 293 ("Although the plaintiffs conclusory allege that the banks had actual knowledge, we think they failed to plead facts with the requisite particularity to support that claim.") .

## B.  The SEC's Allegations of Recklessness Are Legally Deficient

Even if the Court were to accept that allegations of recklessness are sufficient to satisfy the mental state requirement of an aiding and abetting claim in this case, the facts alleged do not reasonably support an inference that RB either recklessly disregarded the Core Defendants' fraudulent activity or that RBs conduct was reckless in any way. Courts have generally defined recklessness in a securities fraud context as "highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which present a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that actor must have been aware of it." *Allan Harwich*, *The Neglected Relationship of Materiality and Recklessness in Actions under Rule 10b-5*, 55 Bus. Law. 1023, 1024 & n. 10 (2000); *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997). In the

First Circuit, "proving scienter requires 'a showing of either conscious intent to defraud or 'a high degree of recklessness.'" *Flannery v. SEC*, 810 F. 3d 1, 9 (1st Cir. 2015) (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F. 3d 46, 58 (1st Cir. 2008).

In *Cohen v. Stevanovich*, the Court dismissed a complaint alleging a massive, illegal stock manipulation scheme, in part, because "[p]laintiffs have failed to allege facts supporting a strong inference of conscious wrongdoing or recklessness, i.e., 'deliberate behavior' or conduct that was 'highly unreasonable' and 'an extreme departure from the standards of ordinary care.'" *Cohen v. Stevanovich*, 722 F. Supp. 2d 416 (S.D.N.Y. 2010) (quoting *Novak v. Kasaks*, 216 F. 3d 300 at 308 (2d Cir. 2000); citing *In re Scholastic Corp. Sec. Litig.*, 252 F. 3d 63, 76 (2d. Cir. 2001).

The SEC's Complaint fails to allege facts supporting a strong inference of either conscious wrongdoing or recklessness. Nothing that RB is alleged to have done constitutes "highly unreasonable" conduct, nor did he do anything or fail to do anything in connection with the subject stock transactions that constitute "an extreme departure from the standards of ordinary care." There is no meaningful evidence to link RB's trading in Token with the Core Defendants alleged fraud in connection with private sales of the stock.

**C. The SEC Fails to Sufficiently Plead Knowing and Substantial Assistance By RB**

Substantial assistance is generally found where a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) (quotation and citation omitted); *Rosner v. Bank of China,* No. 06 Civ. 13562, 2008 WL 5416380 at *5 (S.D.N.Y. 2008) (quotation and citation omitted), aff'd, 349 Fed. App.637 (2d Cir. 2009). To satisfy the "substantial assistance" component of the aiding and abetting test, the SEC must demonstrate that the defendant "in some sort associated himself with the venture, that he participated in something he wished to

bring about, and that he sought by his action to make it succeed." *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012); *SEC v. Espuelas*, 905 F. Supp. 2d 507, 525 (S.D.N.Y. 2012). In other words, the complaint must allege that the aider and abettor's conduct was a "substantial causal factor in the perpetration" of the underlying fraud. *SEC v. Zwick,* No. 03 Civ. 2742, 2007 WL 831812 at*16 (S.D.N.Y. 2007).

The Complaint fails to allege that RB substantially assisted the Core Defendants in the perpetration of their supposed fraudulent scheme. The SEC alleges that RB provided substantial assistance to the Core Defendants' alleged fraud by engaging in manipulative open market trades in Token stock. These allegations are insufficient; as previously stated, the trades on their own, with substantive allegations that RB knew of the Core Defendants' fraud and, therefore had a motive to artificially influence the price of Token stock does not come close to constituting substantial assistance to the Core Defendants' alleged fraud of investors in private securities offerings. This is particularly true when the alleged aider and abettor lacked specific knowledge of the primary violators alleged fraud. The SEC fails to plead with particularity that RB knowingly or even recklessly associated himself with the alleged venture of Trends, Rossetti and the Greylings to defraud investors, or that RB participated in or wished to bring about the defrauding these investors.

"[M]ere awareness and the approval of the primary violation is insufficient to make out a claim for substantial assistance' and inaction is insufficient 'unless it was designed intentionally to aid the primary violator, or it was in conscious or reckless violation of any duty to act." *SEC v. Baxter,* No. C-05-03843 RMW, 2007 WL 2013958, at *9 (N.D. Cal. 2007)), *quoting SEC v. Treadway*, 430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006). Substantial assistance requires a "significant

and active, as well as knowing participation" in the fraud. *Wright v. Schock*, 571 F. Supp. 642, 663 (N.D. Cal. 1983), aff'd, 742 F.2d 541 (9th Cir. 1984).

Courts have read the actual knowledge and substantial assistance requirements as inversely linked. *SEC v. Nacchio*, 614 F. Supp. 2d 1164, 1173-74 (D. Colo. 2009) (the "knowledge" and "substantial assistance" elements of the aiding and abetting test [are linked] in an inverse relationship, such that the more acute a party's knowledge of the ongoing fraudulent scheme, the less substantial the acts constituting substantial assistance need be and vice-versa") citing *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 96 (5th Cir. 1975). Here, the SEC has failed to allege with specificity that RB knew of the private securities offerings and was involved in the scheme to defraud investors or even know about this scheme. Accordingly, the allegations in the Complaint are plainly insufficient to state that RB, by his trading in Token, intended to assist in the alleged fraud of the Core Defendants. See *Howard v. SEC*, 376 F.3d 1136, 1142 (D.C. Cir. 2004) (finding that a broker did not aid and abet a securities violation where he did not know that his conduct was part of an overall impropriety); *SEC v. Peretz,* 317 F. Supp 2d 58, 64 (no aiding and abetting liability in absence of proof that defendant knew of fraud and intended to assist it). The specific allegations as to RB in the Complaint do not come close to meeting this standard.

Accordingly, the SEC's aiding and abetting claim against RB fails as a matter of law. For these reasons, the SEC's claim against RB should be dismissed with prejudice.

## POINT VI

## THE COMPLAINT FAILS TO COMPLY WITH
## THE PARTICULARITY REQUIREMENTS OF RULE 9(B)

Rule 9(b)'s command to particularize allegations of fraud applies to each claim in the complaint because they all sound in fraud. *Greenstone v. Cambex Corp.*, 975 F. 2d 22 (1st Cir.

1992) (securities fraud claims under Section 10(b) must be pled with particularity); *SEC v. KPMG LLP*, 2003 U.S. Dist. LEXIS 14521, *9 (S.D.N.Y. 2003). Courts have interpreted this rule to require plaints to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Stevalman v. Alias Research Inc.,* 174 F. 3d 79, 84 (2d Cir. 1999); see also *In re NBTY, Inc., Sec. Litig.,* 224 F. Supp. 2d 482, 491 (E.D.N.Y. 2002). Conclusory allegations are not enough to meet this standard; a plaintiff-or the government in this case-must allege facts. Simply stated, the SEC must allege the who, what, where, when, and why relating to the alleged fraudulent statements. See *Bernstein v. Applied Extrusion Technologies,* 150 F.R.D. 433 (D. Mass. 1993) (Plaintiff in securities fraud case is required to specify time, place, and content of any alleged false representations). The Complaint fails to satisfy the stringent pleading requirements of 9(b). The Complaint fails to plead with particularity required by Rule 9(b) the how, when, and where RB allegedly learned of the Core Defendants' fraudulent scheme or how, when and where RB allegedly coordinated sham trades with Clinton Greyling.

## REQUEST FOR ORAL ARGUMENT

Defendant, RB, hereby requests oral argument in support of his motion to dismiss the Complaint.

## CONCLUSION

The SEC's Complaint against RB fails to state a claim upon which relief can be granted. In addition, venue in the District of Massachusetts is improper. Accordingly, the Complaint against RB should be dismissed with prejudice.

Dated: August 22, 2022
        New York, New York

SIMONS LAW OFFICE
*Attorneys for Defendant Roger Bendelac*

*/s/ Joseph B. Simons*
Joseph B. Simons
10 Post Office Square, Suite 800
Boston, MA 02109
Tel: (781) 797-0555
Email: joe@jbsimonslaw.com

THE ROTH LAW FIRM, PLLC
*Attorneys for Defendant Roger Bendelac*

*/s/ Richard A. Roth*
Richard A. Roth, Esq. (pro hac vice pending)
Email: rich@rrothlaw.com
1295 Madison Avenue, Floor 22
New York, NY 10017
Tel: (212) 542-8882

*/s/ Brian Levenson*
Brian Levenson, Esq. (pro hac vice pending)
Email: brian@rrothlaw.com
1295 Madison Avenue, Floor 22
New York, NY 10017
Tel: (212) 542-8882

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 22, 2022.

SIMONS LAW OFFICE

*/s/ Joseph B. Simons*
Joseph B. Simons
10 Post Office Square, Suite 800
Boston, MA 02109
Tel: (781) 797-0555
Email: joe@jbsimonslaw.com
*Attorneys for Defendant Roger Bendelac*

22