FILED
IN CLERKS OFFICE

2023 FEB 22 AM 11: 39

DISTRICT COURT

February 23, 2023

UNITED STATES DISTRICT COURT DISTRICT OF
MASSACHUSETTS
U.S. DISTRICT COURT

Civil Action No. 1:22-CV-10889-RGS

| X | x |
| X | x |
| X | x |
| X | x |
| X | x |
| X | x |
| X | x |

SECURITIES AND EXCHANGE COMMISSION vs. Trends Investments Inc., Brandon Rossetti, Clinton Greyling, Leslie Greyling, Roger Bendelac and Thomas Capellini
Defendants
HONORABLE RICHARD G. STEARNS, PRESIDING

**MOTION FOR SUMMARY JUDGMENT AND IN THE ALTERNATIVE RENEWED MOTION TO TRANSFER VENUE ON THE BASIS OF NEW FACTS.**

Roger BENDELAC ("RB") moves the Court for a Summary Judgment and in case the Court believes condition for a Summary Judgment are not met, it respectfully makes a new demand based on new facts, now recently obtained affidavits from the Massachusetts's investors, thus re-starting the clock on an interlocutory appeal, that the Court transfer the case to the proper venue of the Southern District of New York for Defendants RB and Thomas Capellini ("Capellini") based on the new facts establishing that no venue exists in Massachusetts for RB or Defendant Capellini. It suggests to the Court that all the required elements allowing a summary judgment have been met if the Court looks deeply and carefully into the facts as all the facts in dispute are irrelevant as to any resolution being reached now that a sufficient number of affidavits for the totality of alleged Massachusetts victims and a significant number of the alleged non-Massachusetts victims have been provided demonstrating the death on arrival of the allegations of a scheme or conspiracy involving Defendants RB and Capellini and thus the inability of any juror to resolve this lawsuit against RB or in favor of the SEC's demands against RB and Capellini, only charged of aiding and abetting RB's alleged violations.

1

**RECITAL OF MATERIAL FACTS AS TO WHICH THE MOVING PARTY ROGER BENDELAC ( "RB") CONTENDS THERE IS NO GENUINE ISSUE TO BE TRIED WITH PAGE REFERENCES TO AFFIDAVITS, DEPOSITIONS AND OTHER DOCUMENTATION.**

a) **a.1,** Material fact a) in paragraph #4 OF THE COMPLAINT: **RB accepts that through an entity he controls acquired a blocked of shares in Token Communities Inc.** ("Token") previously known as Extract Pharmaceuticals Inc. See Statement of Irving Aronson as to acquisition of the shares. (Exhibit 1- edited and restricted access due to confidentiality of personal information of third parties and SEC intimidation of witnesses through overreach contact post complaint by the SEC).

**Edited for privacy document Exhibit 1. Restricted access required.**

a) **a.2,** In or around June 2018, **RB acknowledges that he remitted a blank transfer to Attorney** representing Trends Investments Inc. and/or Token, **to return shares that were subject to a contingent note payment.**

*Note:* The above is undisputed. The return allocation resolution was prepared by Trends and/or Token's attorney, RB did not sign it as he did not know the recipients, nevertheless, the blank assignment gave authority to Counsel of Trends and/or Token to proceed. It is not indicative of any recklessness on the part of RB nor is it indicative of any relationship or liability to the recipients as RB strictly followed Trends' Counsel transfer instructions, since the return was for no payment to RB who was obligated to Ivory Mint/Trends if he did not return the contingent payment shares, thus RB chose to return the contingent shares and received no payment. RB knew nothing about any sales to third parties he was not involved in, and it was not his duty to know, RB contrary to SEC thinking has no duty of care to third parties he did not know.

a) a.3. Net RB through his company **Aleutian Equity Holdings, LLC ( "Aleutian") , received a net of 400,000 shares of TKCM. Admitted by SEC.**

**Disputed item is who paid for the shares, documents to back up Exhibit 1 demonstrates that RB paid the $75,000 and other considerations adding to $100,000. Payment is mentioned in the Affidavit and proof can be provided to the Court.**

b) Material Fact b) **Admits that Bendelac received approximately $97,000 from the sales of Token stock through the public markets.** Referred to Brokerage statements available in investigative material and discovery from Pershing Clearing firm and the SEC Complaint, paragraph #4.

c) **Some of the investors purchased and received shares before Bendelac ever bought any shares of Token.**

Back up:

Interrogatory 2 of Tom Capellini to SEC: Did any of the investors described in the Complaint own shares prior to Bendelac's entity ever receiving the Extract Pharmaceutical shares that became Token? Response to Interrogatory No. 2: Subject to, and without waiving any of its general objections, the SEC responds that according to records produced to the SEC by the transfer agent for Token, formerly Extract, the transfer agent issued shares of Extract to Heriot Holdings Limited; Highland Escrow, Trust,

and Real Estate Services Co., Ltd.; CG*; DD*; RH*; RM*; RL*; and Trends on April 27, 2017. (SEC-TranShare-E-0001188-1190.) According to these records, the transfer agent issued shares of Extract to Golden Square Equity Partners Limited, London Pharma Holdings Ltd, and Aleutian Equity Holdings LLC on June 2, 2017. (SEC-TranShare-E-0001191-1192.) *Full names in the original changed to initials for privacy reason. **(See Extract from response from SEC to Capellini's Interrogatories as Exhibit 2). Restricted access.**

d) **Prior to June 2019, the trading by Aleutian in Token shares was all on the sale side and 100 shares twice were bought by Capellini**, the number of shares bought coincidentally by Clinton Greyling or Rossetti is negligible, see **Exhibit A in the Original Complaint Item # 1 on the Docket.**

(For that period, the SEC claims that the trades were organized with Clinton or Rossetti but the facts of the trades themselves shows the alleged coordination unlikely even if Clinton might have falsely claimed it to get credit in his SEC/ADA negotiations as the number of shares either Clinton Greyling or Rossetti bought are immaterial in proportion to the ones sold by RB, perhaps 10 shares accidentally crossing here or there.

Back up- See Exhibit A of the SEC Complaint, # 1 on the Docket).

e) **Although they claimed they did not have the Notes from Clinton Greyling's testimony, SEC now admits that Clinton Greyling told them he was unaware of the June 2019 trading, the June TRADES are the only substantial ones in size.  All June 2019 and post-June 2019 trades related to Token then were not coordinated with Clinton Greyling and Greyling states he was not informed as per SEC 's own admissions in response to Interrogatories from Capellini (Exhibit 2)  That is the bulk of the Token trades.**

Extract from RESPONSE FROM SEC TO INTERROGATORIES 4) from Capellini with SEC: …"Clinton Greyling further stated that he did not request that Bendelac conduct the trading in Token starting in or around June 2019 which reflected an increase in trading volume and frequency. The SEC did not make or keep a record, informal interview notes, or an interview memorandum or report concerning these statements. "SEE ATTACHED COPY OF INTERROGATORIES RESPONSES TO CAPELLINI BY SEC AS EXHIBIT 2- RESTRICTED TO AVOID DISSEMINATION OF PRIVATE INFORMATION. (EXHIBIT 2- restricted)

f) **Roger Bendelac has never met or heard of Brandon Rossetti** at any time prior or during the period or post the period covered by the Complaint (AFFIDAVIT OF ROGER BENDELAC herein attached as Exhibit 3). Nor has he ever communicated with Rossetti directly or indirectly. So far, SEC has produced no assertion and no records of RB knowing or communicating with Rossetti except claiming that a 10-share purchase filled part of a 200 shares sale as a proof of trading with, absurdity in a narrow stock where after the facts connecting the dots are pure chance. Thus, SEC cannot credibly dispute the fact RB has never met, spoken with, or communicated directly or indirectly with Rossetti .

g) **ROGER BENDELAC NEVER RECEIVED $1 FROM THE PROCEEDS OF $2.3 million alleged by the SEC.**

SEC admitted to Roger Bendelac on December 10, 2022, that they recognize Roger Bendelac never received any proceeds. (SWORN statement OF ROGER BENDELAC) (EXHIBIT 3)

Note: SEC claims that Bendelac benefited from receiving shares allegedly paid by investors funds is not a credible issue since about half a dozen entities and persons benefited that way, Bendelac alleges he did not and has back up, but since these other parties are not brought in as defendants on that basis in

here, then that point cannot serve as a basis for any charge for Bendelac. Back up by SEC Response to Capellini's interrogatories. (EXHIBIT 2- TO BE OF RESTRICTED ACCESS). Furthermore, Exhibit I demonstrates RB paid a consideration of "$75,000 and other consideration", the sworn statement of Roger Bendelac (Exhibit 3) states $100,000 with proof of arrangement and payment available.

h) **Thomas Capellini has never met any of the defendants or has no recollection except Bendelac. (Capellini's response to the Complaint). Thomas Capellini has not received $1 from the $2.3 million proceeds. In all, he lost $80,000 plus in his retirement account and made no gain. Not in dispute despite item j) below now resolved by documentation.**

i) All allegations concerning Rossetti, Greylings or Trends and their actions, in the Complaint cannot be admitted or denied by RB as he mostly has no direct knowledge, but he recognizes <u>that no material issue resolution on **ANY NOT ACCEPTED ITEM THAT IS NOT hat IS RELEVANT IN LIGHT OF THE INSIGNIFICANT ROLE OF A TRADING SCHEME EVEN IF` IT HAD OCCURRED CONTRARY TO SEC'S CONTENTION IN THE COMPLAINT.**</u>

j) **Businesses of Capellini or Capellini received funds from Roger Bendelac during the period of the Complaint from Roger Bendelac's businesses. But that has occurred pre and post complaint due to a working relationship since 2014** on to this day. Only disagreement with SEC is the characterization, however, history and records demonstrate the SEC wrong on the characterization and irrelevant to the resolution of this Complaint anyway.

k) **Two investors are Massachusetts** based. (AFFIDAVITS- Exhibits A and B- restricted- that were Exhibit 1 and Exhibit 2 in Motion # 92 on the Docket for retrieval).

l) RB admits that in an email, he stated to prefer avoiding bureaucratic scrutiny by receiving shares in the form of certificate as opposed to DWAC.

PS as to l) : That email was not an intent to commit fraud as it did not concern any of the shares here involved, but most importantly evoked a preference for certainty of the origin of shares coming from the appropriate transferor, since a Certificate implies that a Registered Transfer Agent has signed off on the transfer, thus making it easier to trace the original transferor. It cannot establish any scienter as to securities fraud since it related to securities not involved in this matter. SEC just invaded thousands of emails and picked up one single unrelated email to paint their distorted factual case.

L) <u>**RB admits that he was very briefly a Director of Trends Investments Inc.,**</u>

Note: But quickly resigned and expressed in many emails demanding that he be withdrawn from the Registry that he was not acting in any such capacity and did not feel comfortable in that position. The position was used strictly to obtain a medallion guarantee on a stock transfer that was owed to RB's company and that could not be obtained. Supposedly, Mr. Clinton Greyling, the control party of Trends, testified to that. In any event, it's irrelevant as to any liabilities on wrong-doing by the sole real executive of Trends Investments Inc., Mr. Clinton Greyling. The SEC did not charge former Secretary of State Henry Kissinger or General Miley, or former Secretary of State George Schultz, now passed away, for sitting on the Board of Directors of Theranos while Ms. Elizabeth Holmes defrauded many. The difference is RB did not have any responsibilities, never attended a meeting, and resigned within a few weeks even if Mr. Greyling was deficient in processing the resignation on a timely basis with the State of Florida.

**THIS COURT PREVIOUSLY WROTE when rejecting Capellini's motion:**

**The court also finds that the venue is proper in this district. Under the Exchange Act, venue is proper in districts "wherein any act or transaction constituting the violation occurred," 15 U.S.C. § 78aa(a). In cases involving securities fraud conspiracies, "any act committed in [a district] by a participant in furtherance of the scheme... will establish venue in the District as to all of the participants." S.E.C. v. Grendys, 579 F. Supp. 2d 1, 4 (D.D.C. 2008). Here, the Complaint alleges that Trends sold securities to two investors in Massachusetts and that Brandon Rossetti offered and sold stock on behalf of Trends while residing in Massachusetts. Venue is therefore proper as to all defendants, including Capellini. (RGS, law3)**

Now it is established by no other than the two investors that a credible conspiracy to commit fraud in the State of Massachusetts through alleged schemed trading is not met in the State of Massachusetts and the mere violations of selling in the State of Massachusetts by Defendant Rossetti completely unknown to RB and Capellini concern Rossetti only since no credible scheme was required for him to do his sales in Massachusetts. No communication of any kind took place with him, as proven by the declarations of Clinton Greyling during the interviews the SEC claims it does not have the record of due to its own choice not to record or take notes on its own.

The SEC has prematurely settled Defendant Clinton Greyling if it wanted to make the allegations it made in a manner defensible by the two last defendants in the Complaint's title, since knowing RB and Capellini do not know Rossetti, they alleged traded with Rossetti on Token through Clinton Greyling's intermediation then after reading the first version of this motion they for the first time claim that Clinton Greyling stated RB traded directly with Rossetti in their interrogatories responses, an impossibility since RB has never met or spoken with or met this gentleman. That did not occur and the SEC's actions to prevent Clinton Greyling's testimony from being available further proves it, regardless of their denials. The SEC KNOWS THE TRUE TESTIMONY OF CLINTON GREYLING ON THE ALLEGED MANIPULATION OF TOKEN COMMUNITIES DENIES THEIR THESIS. Whatever credit seeking variations Clinton Greyling thought to add are a result of threats of criminal prosecution in retribution resulting in a no choreographed testimony to construct the Complaint.

The Complaint claims coordination between RB and Clinton Greyling for the period pre-May 2019, for the trades are not credible.  Exhibit A in the complaint shows that RB essentially sold very small amounts of Token shares (i.e. a few hundred over a year and a half) and only jokesters would seriously believe that it could affect the view of any investors as to liquidity. Curiously, they now claim that Clinton Greyling admitted no connection to the period where Bendelac and Capellini traded more shares in June and post June 2019. The allegation that Bendelac traded directly with Rossetti is not serious unless someone believes in telepathy with people they do not know and have never met.

A Jury will not be fooled as a jury will investigate the written communications of Clinton Greyling with RB and will not find any wrongdoing by RB since they demonstrate the coordination did not occur on Token and could not have occurred. As to small trades in the trading to demonstrate the viability of a new share, a different and legitimate non-manipulative way to start a debut for a newly trading entity, that is not to be commingled here to muddy the waters in a biased and confusing way. The SEC or Clinton Greyling ("CG") cannot produce one single written proof of transmission connection with RB for the Token orders. Once CG sent a picture of a Token chart but did so for about seven other stocks over

time and once that same day on a separate stock. Now the investors tell us that they did not rely on any trading to purchase or to maintain their purchases anyway .

Furthermore, as sole Custodian and Officer of Trends Investments Inc ( " Trends"), CG on the obvious advice of Attorney Geoffrey Nathan acknowledged receipt of the Complaint by Trends but failed to have Trends enter a response.

Clinton Greyling signed an assent to a pre-judgment on May 5 on a complaint first published in June 8, 2022. Clinton Greyling and his lawyer participated in the making of the complaint based on the promises made to Clinton Greyling by his lawyer Geoffrey Nathan himself negotiating with David Scheffler himself negotiating with the US ADA. That is one of the special nationally known Boston nexuses when it comes to violations of venue and expansion of jurisdiction along with improper commingling of investigations. A jury would be shocked to know that ex Defendant Clinton Greyling and his lawyer participated to the creation tailored to their benefit to mitigate his criminal risks by imposing an SEC Complaint on perfectly innocent people. There are ample proofs of forgeries in the documentation provided during the purchase of the shells (e.g., Aleutian is not spelled Aleuthin) and thus RB was not part of that alleged purchase, and the Board Resolution transmitting to a series of investors, was not signed by RB. In the same manner, the SEC claims that documentation was used by Rossetti on sales of Extract Pharmaceuticals Inc. that had a resume of Thomas Capellini ("TC") as Head of the Advisory Board, TC had no knowledge of that unauthorized use and stands ready to provide an Affidavit on this matter. His resume was publicly available when he served a U.K. based publicly traded company.

On the share matter transmission due to a contractual obligation to return or pay more, these matters even if not resolved, do not affect whatsoever the Complaint resolution as many others were part of the purchases or transmitted shares and are not named in this lawsuit. In discovery document unknown to this Defendant prior to receipt of such, another entity transmitted shares and it is not named in this lawsuit. Thus, only the trading seems to make the difference and if that is the case, the SEC should have focused on what it's beef is, however, because it could not substantiate a case on people that made zero, they pursued tangential angles that bring nothing to the case rationale. They realized they could not even match the trading timing with the private sales and in some cases, they try to link our trading to private sales that occurred even before RB owned one single share of Extract Pharmaceuticals Inc, the predecessor to Token. When they could not find any link to Alterola, they decided to link it to some representation Mr. Rossetti made on the price of Millennium and seek a single 100 share trade in Millennium from a period pre-statute of limitations on an alleged representation of Mr. Rossetti to a prospect on a sale that was not even consummated. When post receipt of threat of a lawsuit and post receipt of a Wells letter from the SEC, RB and Capellini obtained Alterola shares from the new management of Alterola for the sales of molecules from a Company they were shareholders in with zero involvement of any of the Greylings, the SEC now tries to extend discoveries to the year 2022, to link unlinked transactions disclosed in SEC filings to the fact that at some point Alterola might have been allegedly controlled by Mr. Leslie Greyling. When the SEC is trying to dig forward to that extent, one knows it knows it should not have brought this case based on a prejudiced analysis born out of the entry into the lives of ordinary different citizens from a different place with prejudices stemming from a gap in familiarity. The fact is that no one controls what others do, they can only control what they themselves do and it is time the SEC ceases the never-ending attempts to create a scheme at any cost. The SEC could have started with a proper investigation initiated with asking the proper questions from the allegedly defrauded investors. Some of them have moved on, and some, believe it or not, continue

purchasing from their sellers and RB has zero connection to several companies they have been purchasing post this Complaint, where do they need our trading to sell anything for some or to purchase anything for others? If the SEC wants to make knowledge of sales an offense, then where does it start and where does it end? In this case, we know that the SEC has put in the investigating data, bank accounts of people that don't even know their accounts were reviewed just because they found unrelated payments from a business connected to me, even penetrating their family bank accounts and these people have not even traded one share of any of the stocks involved.

For my family, they have created hell for three years by destroying the career of my wife after 35 years of dedicated and professional work, with Mr. Scheffler acknowledging the constant coordinating with Mr. Donelan of the SEC and FINRA Boston, about my wife's case which has zero connection to this case, except that it was created by the SEC Boston to simply make an argument that is irrelevant to this case anyway. They even tried to introduce this case in her case, but an intelligent panel rejected the absurdity motivated by incompetence of mental enforcement derangement syndrome: let's make her guilty of her husband's and brother's issues. In the same way, the FINRA investigating reports obtained in discovery label in 21st Century America CG with a parenthesis in big letters: "son of a criminal" on their investigating files ordered by Mr. Donelan. A true disgrace. When these type of absurdities occur, one may be tempted to laugh out loud, but not when it destroys personal and professional lives and careers just because enforcers are behaving like the mob in the misuse of their huge powers as agents of the government, then it's no longer a matter of laughs.

It is urgent this charade ends quickly because for the taxpayers to incur the costs of a jury trial is not justified. In this trail, the only present parties would be the two people accused that did not know any of the investors and did not take one dollar from them. It would be adding insult to injury.

The only appropriate response from the Court is to dismiss this tainted case or grant a summary judgment in favor of RB and TC as all the facts surrounding the improper actions and now the additional evidence created by the affidavits of investors including 100% for the Massachusetts investors and a large part of the non-Massachusetts investors prove no trading scheme occurred on Token Communities Inc. or any other stocks part of the SEC's complaint.

Another novel way of proceeding would be for the Court to grant a summary judgment as to the State of Massachusetts only for defendants RB and TC and allow the SEC to re-file in New York if it believes it has a case concerning any other alleged violations not performed in Massachusetts. It is now clear that no violations occurred in Massachusetts for Defendants RB and Capellini.

Furthermore, if this Court accepts that kind of subterfuge to go around the civil rules, no fair trial can occur regardless of the appropriateness of venue which here, in light of the new facts is now clearly absent and any reasonable juror will decide that the trading scheme did not occur and even if it occurred was immaterial to the defrauding of the investors or the creation of violations of securities laws in the District of Massachusetts or anywhere else. The trading is not proven to have manipulated the share price of Token since the shares of Token went from circa $2 when defendants were visited by the SEC in April 2020, to a high of $9 in the period that followed the visit. The visit had eliminated any possible trading activities in the accounts of RB or Capellini since all trading was suspended post the April 23rd 2020 phone call and has never resumed from RB and Capellini on Token.

Mr. Capellini has according to the Court been sufficiently alleged by the SEC to have aided and abetted RB's alleged violations. That decision was based on misrepresentations by the SEC, but now even if the misrepresentations are accepted as true no reasonable jury can accept them anyway considering the affidavits provided by the two Massachusetts purchasers of shares from Rossetti/Clinton Greyling.

**EXHIBIT A, FOR INVESTOR # 1 ( located as Exhibit 1 in # 92 motion, AND EXHIBIT B FOR INVESTOR # 2,located as Exhibit 2 in # 92 motion. BOTH TO BE RESTRICTED OF ACCESS TO MAINTAIN THE privacy of information for both individual residents of Massachusetts.**

<u>RB's alleged violations are now proven nonexistent in the District of Massachusetts.</u>

The problem is that RB's alleged violation are within the context of an alleged scheme proven nonexistent in this District by the two affidavits provided now by the two sole Massachusetts residents.

Both state in an affidavit, that they have no knowledge of RB and Capellini, never met them, never talked to them <u>and never relied on any trading in the securities in which the SEC alleges means of violations of securities laws.</u>

As to Brandon Rossetti, the absent defendant so far, who at times supposedly resided in Massachusetts, even if he was conducting business authorized or unauthorized, legal or illegal in the State, the facts are that RB has never met or spoken with or met or communicated with Mr. Brandon Rossetti. Mr. Capellini has never met any of the co-defendants except RB and neither RB nor Capellini have ever communicated directly or indirectly with Brandon Rossetti.

THUS, THE ELEMENTS OF THE RULING THAT STATES:" In cases involving securities fraud conspiracies, "any act committed in [a district] by a participant in furtherance of the scheme... will establish venue in the District as to all of the participants." *S.E.C. v. Grendys*, 579 F. Supp. 2d 1, 4 (D.D.C. 2008)" <u>ARE NOT MET IN THE COMPLAINT.</u>

<u>The above is now not established in this case.</u>

The two MASSACHUSETS INVESTORS HAVE NOW SIGNED AFFIDAVITS AND PROVIDED INFORMATION THAT SHOWS THAT ROGER BENDELAC AND THOMAS CAPELLINI DID NOT PARTICIPATE IN THEM BEING ALLEGED VICTIMS OF BRANDON ROSSETTI, CLINTON GREYLING OR TRENDS AND NONE OF THEIR ACTS of trading in New York post the period by over a year as to when the two Massachusetts residents invested and when most other investors invested.

Both Massachusetts based investors signed affidavits stating that no trading influenced them to purchase (They purchased from the Core Defendants prior to either RB or Capellini depositing for RB, or trading the Token shares for both RB and Capellini. They clearly state that no trading in Token or Millennium influenced their purchase of shares or maintenance of ANY INVESTMENTS PURCHASED in any way. <u>BOTH STATE THAT TO DATE THEY HAVE NEVER MET OR COMMUNICATED WITH ROGER BENDELAC AND THOMAS CAPELLINI.</u> Location of the Exhibits is in Docket #92 as Exhibit 1 and 2 in that file.

Thus, by the own criteria of the Court: a conspiracy now proven as non-existent as to RB and Capellini, not just in acts but also in benefits, since only the Core Defendants and neither RB nor Capellini shared in the investors funds of $2.3 million according to the SEC Complaint. If the SEC that traced as much as a

$140 payment by invading all privacy of the Defendants personal affairs, they then should be able to produce one single trace of $1 from the $2.3 million to the pockets of RB or TC.

Any reasonable juror cannot believe that RB and Capellini would violate securities laws for zero benefits for defendants they don't know as to Capellini for all of them and as to RB as to Rossetti, the 40% earner, and that RB would take such risks and risks the retirement funds of a family member if he did not believe the company the trades had an intrinsic economic benefit to his family member.

The documentation of the non-Massachusetts based investors shows that some were sold other stocks in the same manner by the same core defendants and others not named as defendants here, for which the same violations should be alleged if the allegations are real. RB and Capellini had not even owned let alone traded some of the mentioned stocks as the paperwork shows cocktails of several stocks sold privately by core defendants. The contractual agreement as far as late August 2020, several months after the intrusion by the SEC and other law enforcements in the lives of RB and Capellini , core Defendants continue to sell Token needing obviously no help from RB or Capellini through any trading scheme to make such sales.

NEW DISCOVERED FACTS ASIDE FROM THE FACTS CONCERNING THE AFFIDAVITS.

Others not sued in this Complaint have privately sold shares of Token Communities Inc as unregistered brokers or acting as such or as direct sellers for such shares and are not named in this Complaint. Some of these sellers got their shares with no consideration paid, unlike the false allegation as to RB's allegation of non-payment for his shares.

The SEC knows of the other private sellers of Token shares or should have known and evidence that the same sales were not prosecuted, while RB and Capellini that had zero benefits and lost substantial money as to Capellini in Token and as to RB in other transactions from Core Defendants, are asked for disgorgement of inexistent profits, then it is hard to fathom any juror going along with this absurd request of the SEC, motivated by a bad analysis or by being misinformed or worst, incompetent. It will show biased actions by the SEC and the construction of an improperly selective case which purpose cannot be deterrence or enforcement of any securities laws since the same alleged violations are ignored for several other individuals and entities unless the SEC choses when it is a violation at its own discretion in an unequal application of securities laws. In that case, it cannot be a violation if known and selectively pursued.

Let's remind the SEC of the statement of a great Bostonian, Attorney Joseph Welch during the Army McCarthy hearings of 1954 where then Senator Joseph McCarthy interrupted Joseph Welch and Joseph Welch responded: "Until this moment, Senator, I think I never really gauged your cruelty (...) At long last, have you no sense of decency ?" I would like to replace the word Senator with the word Senior Enforcement Attorney... and state the same, much collateral damage has occurred unnecessarily and it is time, this Court intervenes at last in the same great tradition of *Bostonian attorney Joseph Welch showed to the Nation in 1954.*

*Let us have that evidence and proof of non-action by the SEC discussed in a conference if the court wants to ascertain any facts. I stand ready to show up with documentation and verifiable under oath statements.*

*It can just be laid out to the Court in a conference in further, "cherry on the pie support" of the required summary judgment 's conditions to show that no reasonable juror can find for Plaintiff as to RB and Capellini.*

*Sufficient proofs exist that would show that reasonable jurors would not be able to find RB and Capellini guilty of the alleged violations or find them liable on the facts now unearthed and that were obscured by the SEC adding the last two defendants to the Complaint in an error of judgment motivated by manipulation and commingling with the other US ADA track.*

Additionally, the statute of limitations has run out on the Massachusetts investors as it remains 5 years back from the June 8, 2022 Complaint filing. All sales for the two Massachusetts investors for the shares alleged as schemed traded in the Complaint were done in March 2017 paid in April 2017 when it comes to Token even if a delivery occurred subsequently on apparently replacement shares. In any event, aside from that, the affidavits of the Massachusetts residents are clear that Roger BENDELAC and Thomas Capellini did not participate in any conspiracy in the District of Massachusetts. and have not aided and abetted the core initial defendants.

As to trading coordination, the affidavits of the investors make that moot. The SEC description of the February 19, 2019, conversation about trades that were to occur 2 full years after the 2017 purchases of the Massachusetts investors cannot establish venue in Massachusetts but cannot establish a link to the purchases of securities legal or illegal by any investor from the core defendants. EXHIBIT 6 – A screen shot of the conversation of that day, February 19, 2019, on skype shows that is a lie that RB and Clinton Greyling would be discussing that on that day when the main demand was Clinton Greyling demanding $ 8000 from RB on some share purchases, another blow to the lies of the SEC as to non-payment.

The SEC is already terrifying the Affidavits givers by making intimidating phone calls through attorney David Scheffler, that is allegedly promising he would try to modify SEC policies as to assigning some monies back directly to them and attempting to get into the Affidavit 's content and begging them to help him take the "bad guys" away, these conversations came through a third party, but that third party stands ready to come to a hearing and share their knowledge of the SEC's actions that have started since the emergence of the affidavits with now new requests of documents from the investors on an investigation that has supposedly already resulted in a Complaint.

**Another proof, the actions of Mr. David Scheffler contacting the affidavits' issuers.**

But the contacting alone with the intimidating title of SEC Senior Enforcement on ordinary citizens out of the regular open discovery process in an investigation supposedly closed is extremely disturbing and Court intervention is required now. Mr. Scheffler who in the Complaint claims a deposit facility when anyone can clearly see based on the records that they sold shares before I even owned the stock and before I deposited the shares by over a year.

Here I have attached a communication ( Exhibit 7) of Clinton Greyling, see attached screen shot and is that the communication of someone I would help make a portion of $ 2.3 million for zero intake by me? The problem is the SEC came in with set ideas and there was nothing of what they wanted to create as part of their wide net unconstitutional Order of Investigation dated in 2016 initially. A shame and a waste of public money.

That is a failure of analysis and a failure of logic, like people obsessed with sex, the SEC is obsessed by " scheme trading" and saw two people agreeing for their own economic benefits on transactions they entered through the respective market makers of two different clearing firms with no control as to how the trades would meet, a fact proven by the specific narrative in the complaint of how others could knock down the price and RB and Capellini 's account did not intervene. In the same way that numerous trades on Millennium at a few cents a share could not have been to enhance the standing of the share price, and there too lies the SEC fallacy that no juror of a sane mind and average intelligent can believe.

**There are no established links between the private investors' sales and the price of Token. Most of the private sales occurred in Alterola and other stocks in which RB and Capellini had zero shares.**

The few hundred dollars sales here or then prior to June 2019 are not really a serious contention as to causality and without causality there is no case, absence any benefit to Roger Bendelac or Thomas Capellini aside from the one derived from their own trading for themselves that was in retrospect double edged and resulted in substantial losses in his retirement account for Thomas Capellini, that he accepted as a risk he took on the investment.

BY 2017, EARLY 2018, MOST OF THE $ 2.3 MILLION WERE " PLACED".

The trading in Token became more substantial only in June 2019 and even then it was for a family purpose related to liquifying for business purposes unlinked to any market impression .

A repeat of facts from a previous filing to re-emphasize the points then made:

#62
62. As another example, on February 19, 2019, Clinton Greyling and Bendelac placed coordinated trades in order to create the false appearance of active trading and to manipulate the price of Token: Bendelac through Aleutian sold 100 shares at $2.05 per share; Greyling bought 100 shares at $2.00 per share and 100 shares at $9.95; and Bendelac bought 100 shares at $2.05 per share in Capellini's account. However, there was a market transaction between unaffiliated of 3,350 shares of Token at a price of $0.101 per share which dramatically lowered Token's reported price, which closed at $0.101 per share. Bendelac and Clinton Greyling had multiple phone calls on the evening of February 19, 2019.

Lies as multiple skype messages that day show Mr. Clinton Greyling with one obsession only, demanding an $ 8000 payment by RB related to other on-going business matters or securities purchases unrelated to any TKCM matter

WE NOW KNOW THAT WHEN ATTORNEY DAVID SCHEFFLER DRAFTED THIS COMPLAINT AND WHEN HE PRESENTED THE COMPLAINT TO THE COMMISSION, ATTORNEY DAVID SCHEFFLER **already had testimony from then Defendant Clinton Greyling and** insured that he would eliminate Clinton Greyling from the proceedings by forming a remarkably close bond with Mr. Geoffrey Nathan, effectively becoming an extension of the SEC.

The SEC wants to put on trial RB and Capellini for family related transactions that did not affect any investors and any public investors as the SEC failed to identify the only real other purchasers were market makers and that the trades were not relied upon by the allegedly defrauded investors.

For whatever reasons, Mr. Bill Burton who sold a shell here and benefited supposedly from investors' money is not accused of anything by the SEC. Furthermore Mr. Bill Burton sold shares in the market in May and June 2019 coincidentally hitting the purchases of Thomas Capellini, a proof that Roger Bendelac putting orders to sell for Aleutian did not automatically set as a purchase by Thomas Capellini's of RB's sales, as anyone could compete on price with the order. another destruction of the reasoning of the SEC as to the trades' nature affecting price or being manipulative. Mr. Burton was a seller and did not communicate with RB directly or indirectly about a buyer in the market. We know for sure that Mr. Burton is not part of this case and thus, it would be interesting to know why logically the SEC considers him an innocent party if they claim he coordinated trades and unlike RB he made money as recipient of monies at the change of control of the shell through SCI, his company. Why are not his trades in the complaint if they were manipulative with Rossetti? It further demonstrates the SEC's discrimination against RB and Capellini.

QUOTE HERE FROM RESPONSE # 13 TO BENDELAC'S INTERROGATORIES BY THE SEC:

Emails between Burton and Clinton Greyling and/or Leslie Greyling reflect Burton's involvement in the sale of the Alterola shell. (See e.g., SEC-CDOS-E0003818-19; SEC-CDOS-E-0003829-30.) A ledger produced by J.M. Walker & Associates identifies Burton's entity, SCI Inc., as the recipient of $99,960 in connection with the change of control of Alterola. (SEC-JMWA-E-0011902). According to transfer agent records, SCI Inc. received 1,080,000 shares of Token (then Extract Pharmaceuticals Inc.) on August 17, 2017 (SEC-IST-E-0014213), and 3,000,000 shares of Alterola on October 10, 2018 (SEC-AST-E007016). According to trading data, on May 1, 2019, SCI Inc. sold 100 shares of Token at $2.50 per share and Brandon Rossetti purchased 135 shares of Token at $3.25 per share; on May 16, 2019, Clinton Greyling sold 100 shares of Token at $2.01 per share and Burton purchased 100 shares of Token at $3.45 per share; and on June 11, 2019, Aleutian sold 400 shares of Token at $4.54 per share, Burton sold 100 shares of Token at $4.40 per share, and Thomas Capellini's account was used to purchase 500 shares of Token at prices ranging from $4.40 per share to $4.55 per share. Documents produced by Clinton Greyling include numerous communications with Burton concerning the purchase and sale of shell companies. (See e.g., SEC-Greyling C)

**The first and cleanest relief is now a Summary Judgment in favor of RB and Capellini.**

Even if all the SEC pleadings are accepted as to RB and Capellini who made no money and drew no benefits from the alleged $2.3 million (the ones falsely alleged by the SEC are immaterial in amounts or even inexistent if proper accounting occurs thus irrelevant to be resolved at trial and can be assessed through court submissions if required) distributed between the first 3 core individual defendants, no reasonable jury can believe that for zero benefits and the wrecking of their life two defendants would participate in a non-existent conspiracy. On that basis alone, the criteria of a Summary Judgment are met. <u>In the event the court does not believe the criteria of a summary judgment are met now, then at minimum the venue transfer is fully met.</u>

**The minimum relief asked for in light of all the new material facts is to transfer this case in the only district the two defendants that have zero relationship to Massachusetts either through the sole two Massachusetts residents involved as alleged victims or through the alleged from time to time resident Brandon Rossetti they don't know, have never met and for sure, have not helped in any scheme that is now proven non-existent in the State of Massachusetts.**

This Defendant has an affirmative defense of unconstitutional acts and because it affects a modus operandi in the Massachusetts area, only a neutral venue well-heeled for fairness such as the Southern District of New York and the Second Circuit can have a fresh and unbiased eye as to the actions of the Massachusetts Boston based SEC Enforcement personnel and their inappropriate closeness with the US ADA Office in Massachusetts and their improper enrollment of FINRA Boston in a bogus disciplinary hearings against RB's family member to organize an impression in the SEC Case at any cost.

The Southern District of New York in many cases has looked and dismissed the admission of evidence based on unconstitutional violations in even the redacting of a warrant based on improperly created probable cause USA VS. Ben Wey Et. Al. (**1:15-cr-00611-AJN-1** USA v. Wey et al),, act that resulted in the dismissal of the civil lawsuit of the SEC by the SEC itself, in their parallel civil case to that dismissed criminal case, and thus all that is asked if the court does not grant a summary judgment is to transfer this case as to RB and Capellini to the venue where they belong: the Southern District of New York as all that is left is to decide if their own trading is in itself and on itself a source of any violation. But it is only alleged in connection with the alleged scheme and thus really the proper action is a summary judgment either with full effect or for Massachusetts only.

But here the glove truly does not fit, the claim of violations of securities laws for a nonexistent scheme by two bystanders is an absurdity of rare dimension. If Rossetti used fake documents portraying fictitious information, then he is also defrauding the persons he misrepresents, if he uses market information from people that don't even know he exists then on what LOGICAL basis can one even believe the scheme? The SEC Boston OVERREACHED, then allied itself with one of the core responsible defendants and his lawyer, Geoffrey Nathan, who as we stated is an extension of law enforcement and not truly acting as a lawyer here, to go against two people that have never envisaged being here. To economically destroy the wife of one of them and to cater to billionaires in doing so, just to be able to say they stopped two guys that have nothing to do with this issue of the alleged defrauding of the investors by private sellers. The investors themselves have expressed their profound shock of the existence of these other collateral victims under the false pretext of protection of the public. One could see that Mr. Gary Gensler, the SEC Chairman, who spent countless hours on video calls disserting on potential legislation for crypto currencies and exchanges had an entire group focus on Roger Bendelac and Thomas Capellini for zero benefit to the public as they took zero from anyone and if anything were defrauded themselves, while Mr. Bankman Fried was allegedly taking billions from innocent public members. It is time to impose a just outcome and relief, by the Court issuing a summary judgment in my favor and in favor of Thomas Capellini.

In the event the Court wants to assess further details or clarify any matters, this Pro-se Defendant and upon information and belief, certainly Counsel for Capellini stand ready to participate in any oral arguments along with SEC in front of the Court.

RESPECTFULLY SUBMITTED,

ROGER BENDELAC

s/s Roger Bendelac

ROGER BENDELAC PRO SE DEFENDANT

575 Madison Avenue, suite 1006
New York, NY 10022
TEL 9179824565
EMAIL: rbendelac@yahoo.com