UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>                    Plaintiff,<br>     v.<br><br>TRENDS INVESTMENTS, INC., BRANDON ROSSETTI, CLINTON GREYLING, LESLIE GREYLING, ROGER BENDELAC, and THOMAS CAPELLINI<br>                    Defendants. | Civil Action No. 1:22-CV-10889-RGS |

## DECLARATION OF RYAN D. MURPHY

I, Ryan D. Murphy, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1.  Since January 2020, I have been employed as an Enforcement Accountant with the U.S. Securities and Exchange Commission ("the Commission") in its Boston Regional Office. My duties include conducting investigations relating to potential violations of the federal securities laws.

2.  I received a Bachelor of Science degree in accounting and business administration, with a concentration in finance, from the University of Richmond in Virginia in 2009. Before joining the Commission, I was most recently a managing director in the forensic accounting and complex business litigation practice at StoneTurn in Boston, where I worked for more than ten years.

3.  I am a Certified Public Accountant in the Commonwealth of Massachusetts, and the State of New York. I am also Certified in Financial Forensics by the American Institute of Certified Public Accountants.

4. I make this Declaration based in support of the Commission's Motion for Default Judgment Against Defendants Trends Investments Inc. ("Trends"), Leslie Greyling and Brandon Rossetti.

5. I reviewed documents and data produced to the Commission that include, among other things, banking records for Trends and its affiliates, transfer agent records for Alterola Biotech Inc. ("Alterola") and Token Communities Ltd. ("Token"), and documents produced by various parties including, Rossetti, Clinton Greyling, and Trends.

6. Counsel for the Commission asked me to calculate the amount of disgorgement received by Trends, Leslie Greyling and Brandon Rossetti derived from the schemes described in the Commission's complaint.

7. Counsel for the Commission advised me to consider any net profits earned by Trends to be considered disgorgement equally attributable to Leslie Greyling.

8. I reviewed Trends' bank records from Bank of America to identify payments received from investors solicited in the Token and Alterola schemes. Counsel for the Commission instructed me to disregard any payments received by Trends prior to February 1, 2017. Starting in February 2017, I reviewed incoming payments received into the Trends bank accounts. I considered the payments related to the Token or Alterola schemes by cross-referencing the names of the individuals or entities making the payments to one or more of the following sources of information:

  a. Whether the investor appeared on the shareholder lists produced by the transfer agents for Alterola and/or Token,

  b. Whether the wire transfer details indicated that the purpose of the payment was an investment in Alterola and/or Token,

c. Whether other information, such as email communications, text messages or records produced by Trends indicated that the investor was solicited to purchase shares of Alterola and/or Token.

9. Based on the analysis described above, I identified payments received from more than 30 different investors accounting for gross proceeds of $2,572,497.

10. I reviewed Trends' bank records and other documentation in order to identify any direct costs incurred by Trends as part of the Token and Alterola schemes. I identified payments totaling $797,750 that Trends made to Brandon Rossetti during the relevant time period. This amount represents my calculation of net profits earned by Rossetti from the Alterola and Token schemes.

11. The following table is a summary of my calculation of net profits for Trends and Leslie Greyling by year. The amount listed as "Payments to Rossetti" represent the net profits received by Rossetti by year.

|  | | 2017 | | 2018 | | 2019 | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Cash Received from Investors | $ | 917,500 | $ | 1,232,008 | $ | 422,989 | $ | 2,572,497 |
| Less: Payments to Rossetti | | (332,500) | | (399,350) | | (65,900) | | (797,750) |
| Net Profits to Trends and Leslie Greyling | $ | 585,000 | $ | 832,658 | $ | 357,089 | $ | 1,774,747 |

12. Counsel for the Commission asked me to calculate prejudgment interest for Trends, Leslie Greyling and Rossetti using their net profits listed above as a disgorgement amount. For each defendant, I determined the net profit for each calendar year and calculated prejudgment interest on each year's income through March 15, 2023, applying an assumption (favorable to the defendants) that all of each year's income was earned on the last day of the year. I calculated prejudgment interest using the standard calculation tool established by the Commission, which applies the interest rate used by the Internal Revenue Service for underpayments, which changes quarterly, and which compounds interest

quarterly. Based on this methodology, I calculated prejudgment interest attributable to Trends and Leslie Greyling of $361,798. Details supporting my prejudgment interest calculation are attached hereto as Exhibit A and summarized in the table below:

|  | 2017 | 2018 | 2019 | TOTAL |
|---|---|---|---|---|
| **Net Profits to Trends and Leslie Greyling** | $ 585,000 | $ 832,658 | $ 357,089 | $ 1,774,747 |
| PJI Through 3/15/2023 | 149,469 | 164,498 | 47,830 | 361,798 |
| **Disgorgement + PJI** | $ 734,469 | $ 997,156 | $ 404,920 | $ 2,136,545 |

13. I calculated prejudgment interest attributable to Rossetti of $172,676 as summarized in the table below:

|  | 2017 | 2018 | 2019 | TOTAL |
|---|---|---|---|---|
| **Net Profit to Rossetti** | $ 332,500 | $ 399,350 | $ 65,900 | $ 797,750 |
| PJI Through 3/15/2023 | 84,955 | 78,895 | 8,827 | 172,676 |
| **Disgorgement + PJI** | $ 417,455 | $ 478,245 | $ 74,727 | $ 970,426 |

14. In summary, the total amount of disgorgement and prejudgment interest for: (i) Trends is $2,136,545, (ii) Leslie Greyling is $2,136,545, and Rossetti is $970,426.

15. Counsel for the Commission asked me to review publicly available closing price data for Alterola (OTC Ticker: ALTA) and Token (OTC Ticker: TKCM) from 2017 through 2019. Based on my review, the reported closing price for ALTA and TKCM during this time period was always under $5.00 per share, with the exception of three trading days in February 2017 for ALTA and one trading day in February 2019 for TKCM.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 10, 2023, in Boston, Massachusetts.

/s/ *Ryan D. Murphy*
Ryan D. Murphy